And we'll move to our fourth case this morning which is Mahran v. Advocate Christ Medical Center. Ms. Hall. Good morning, your honors. May it please the court. My name is Deanna Hall and I represent Amicus Kerry Randall-Smith of the Mandel Legal Aid Clinic in support of Ms. Amara. This appeal raises two issues. First, whether the district court erred by excluding evidence in its evaluation of Ms. Amara's hostile work environment claim. And second, whether it erroneously required Mr. Mahran to show that he had suffered an additional adverse employment action apart from the hospital's refusal to accommodate his religious practice to establish a Title VII religious failure to accommodate claim. I want to briefly discuss the first issue, that the district court erred in failing to consider the totality of the evidence when analyzing Ms. Amara's hostile work environment claim. The district court erred exclusively in this respect. On page 16 of the first summary judgment order, the court stated that because it found it more appropriate to address the alleged adverse employment action separately under district treatment analysis, it considered only the comments he received in evaluating his hostile work environment claim. But by considering only the evidence of the offensive comments in assessing his hostile work environment claim, the court disregarded other evidence that it considered only in connection with his district treatment claim. Evidence of discriminatory conduct and denied prayer breaks, denied time off for Eid and Ramadan, the failure to train, and negative performance evaluation. But this court has repeatedly held that district courts must consider the evidence as a whole and not only with respect to distinct claims. Ms. Amara's hostile work environment claim should have been evaluated based on both the offensive comments and the discriminatory conduct. And the district court erred by not doing so. Second, the district court erred by requiring Mr. Mahran to have suffered an additional adverse employment action in addition to the hospital's refusal to accommodate his religious practice in order to prevail on a religious failure to accommodate claim under Title VII. Supreme Court precedent does not support such requirement and neither should this court. Title VII defines religion to require employers to provide a reasonable accommodation for the religious practices of their employees where they can do so without undue hardship. In Transworld Airlines v. Hardison, the Supreme Court ruled that the intent and effect of this definition of religion was to make it an unlawful employment practice under Section 703A1 for an employer not to make reasonable accommodations absent undue hardship. The legislative history of the amendments of Title VII that enacted this requirement to accommodate explicitly supports the Supreme Court's reading in Hardison. It makes clear that the failure to accommodate constitutes an unlawful employment practice on its own. Yet, the district court ruled that Mr. Mahran's religious failure to accommodate claim failed on the sole basis that there was insufficient evidence that he suffered an adverse employment action because of the request for prayer breaks. He failed to meet that extra hurdle that Congress and the Supreme Court in Hardison do not even require. How do you reconcile your argument, your statutory argument, with the Supreme Court's decision in the Abercrombie and Fitch case? Yes, Your Honor. The Supreme Court did not eliminate standalone religious failure to accommodate claims, but the Abercrombie case, it simply tells us that every failure to accommodate claim has to proceed as a district treatment claim. That case did not alter the amount of proof that's required to establish a failure to accommodate violation occurred. It does concern that this is fundamentally a discrimination claim and there has to be some discriminatory decision and that the need for an accommodation was a motivating factor for the discriminatory decision on the part of the employer. Right. Abercrombie leaves untouched Hardison's ruling that a separate adverse employment action apart from the failure to accommodate itself is necessary. That Abercrombie confirms the Supreme Court ruling in Hardison that the failure to accommodate is a violation of 703A1 disparate treatment as opposed to disparate impact. I'm not talking about the distinction between a disparate treatment and a disparate impact claim. I'm talking about the basic elements of a discrimination claim under Title VII. There has to be a discriminatory decision or action by the employer that's being challenged and that the employees in a religious accommodation context that the employees need for an accommodation was a motivating factor in that decision. Right. The Supreme Court didn't discuss Hardison at all. It didn't address the requirement of an adverse action because it didn't have to reach that question and Abercrombie was a failure to hire case and Hardison it was a termination. They didn't analyze whether that additional adverse employment action was necessary. But it did say that the Supreme Court did say that there is no freestanding failure to accommodate claim that it is a disparate treatment claim and the case law is clear that disparate treatment claims require proof of an adverse employment action. How do you get around that? Abercrombie did not offer what proof is required. If it did, it would have addressed... It's not a proof question. It's an element question. It's not an amount of proof. It's an element. And for disparate treatment claims, the case law is clear there has to be an adverse employment action of some type. Right. For guidance for the elements, we can look to the concurrence in Abercrombie. Justice Thomas contemplates having an additional adverse employment action and none of the other agreed with him on that respect. But his concurring opinion suggested that there could be a claim if, for example, you gave accommodations to Christians but not to non-Christians, that that could be discrimination. It didn't suggest it was okay to have a standalone claim different from that. Right. Though the failure to accommodate doesn't have to proceed as a standalone claim, even considering it as a disparate treatment claim, we don't believe that the statute or the Supreme Court's good law in Hardison requires an additional adverse employment action that would be contrary to the text of Title VII and the legislative history that enacted that requirement. Title VII, the text of the statute requires discrimination against an individual with respect to his compensation terms, conditions, or privileges of employment. Again, linking it to some type of discrimination with respect to those elements of employment. So why isn't what you're asking us to agree to doing away with that aspect of the statute? The failure to accommodate could be construed as rising to that level to alter the terms and conditions of employment. But in every case, in this circuit... But how would it be a term or condition of employment to be able to exercise the religious belief? Why isn't that a separate element from the discrimination with respect to the religion? Well, the injury happened when the request was denied. We're arguing that a plaintiff shouldn't have to suffer an additional adverse employment action in addition to that denial or prayer break. How do you get that out of the plain language of the statute? Well, denial or prayer break can alter the terms and conditions of employment if that break is denied and the religious accommodation isn't accommodated. I don't see anywhere in the statute where it contemplates an additional adverse employment action. Traditionally, in district treatment case cases, an adverse employment action is required, from my understanding, to distinguish claims that do rise to a level of severity that the court needs to distinguish from a de minimis harm, for instance. Ms. Hollyer, well into your rebuttal time, but I do have a procedural question. Why isn't this entire argument waived? Because in the district court, Mr. Magham did not... And in fact, it's almost an incited error kind of situation. He submitted the case to the district court with the understanding that proof of an adverse employment action was an element of the claim pursuant to our circuit case law. So why isn't this whole argument waived? Correct. Mr. Magham did not waive this argument or invite the error by stating the settled law of the circuit. In the district court, Mr. Magham didn't argue that the controlling case should be changed or disregarded because the district court had no authority to change controlling case law and grant him relief. He now properly challenges the seven circuit standard in the seven circuit where he can be granted relief. Unless there are any other questions? Yes, Your Honor. That's fine. You reserved some in rebuttal and we do have the EEOC. You're splitting your time. So let's proceed to hear from Ms. Gaines. Thank you, Your Honor. May it please the court. The failure to accommodate a religious observance or practice prevents the individual from practicing his religion, which is to otherwise discriminate in the terms, conditions, and privileges of employment. So by having to follow a work rule despite a religious conflict, that employee is being subject to work conditions that other employees are not. And this is discrimination because of a religious practice or observance and a Title VII violation unless the accommodation would be an undue hardship on the employer's business. Reasonable accommodation of observances and practices enable the employee to enjoy equal benefits and privileges of employment and equal opportunity, which is the core aim of Title VII. There is no suggestion in Title VII that a failure to accommodate is unlawful only if the employee is also disciplined or discharged for resisting a work requirement that conflicts with his religion. Religious practices are given special favored treatment under the statute. I also wanted to point out that this interpretation fits comfortably within the Seventh Circuit's statement of a prima facie case because the third element in that prima facie case says the failure to accommodate a religious need has subjected the employer to other discriminatory treatment. So whether you call the failure to accommodate an adverse employment action, which it is, or another discriminatory treatment, that is a violation of the unlawful employment provision of Title VII. We would also point out that this court has stated in ADI that Title VII does not contemplate asking employees to sacrifice their jobs to observe their religious practices. Title VII is aimed to ensure that employees would not have to sacrifice their jobs to observe their religious practices. So what's unusual about this interpretation is it involves employees who are working despite being denied an accommodation. In those cases, factually, are few and far between. So it's unusual to have an employee who continues to suffer a compromise of his religious beliefs because he can't afford to quit his job. So that class of employees is protected by the statute the same as if someone who decides not that he can't continue working if he does not have sufficient prayer breaks or has to work on Saturdays or can't shave his beard and is then fired or punished. The employee that is suffering through a denial of accommodation is also protected under the plain language of the statute because his terms, conditions, and privileges of employment have been discriminatorily altered. You have one minute left. Okay, I just wanted to point out that Abercrombie places cases under Title VII in two buckets, disparate treatment and disparate impact. But it just has made the analysis of failure to accommodate claims more carefully rooted within the language of this terms, conditions, and employment, otherwise discriminate language of 703A1. It did not change the fact that you can still bring a failure to accommodate claim under this disparate treatment theory. It fits clearly in the language of the statute. And this court could decide this issue without looking at anything beyond the text of Title VII. Abercrombie also points out that religious practices are given favored treatment. And the language of 701J affirmatively obligates employers not to fail to hire, discharge, or otherwise discriminate against any individual because of that individual's religious observance or practice. So because of the unique way that this has worked into the definition of religion itself, there is clearly a cause of action for failure to discriminate, regardless of whether any other penalty or consequence is visited upon the employee. Your time has expired. Thank you very much. Ms. Masters. Good morning, Your Honors. May it please the Court. Although Moran raised multiple claims before the district court, the court-appointed amicus only presses to an appeal. His challenge to summary judgment on his religious-based hostile work environment claim and his failure to accommodate claim. The appeal regarding each of these claims should be rejected because neither has been properly raised in this court, and even if properly before the court, both fail on the merits. Moran alleged discriminatory treatment based upon three different protected characteristics, religion, national origin, and race, based upon multiple statutes and multiple different theories. As most recently reiterated by this court in Ford v. Marion County Sheriff's Office and dating back to the Supreme Court's 2002 decision in Morgan, a district court may properly separate from each other claims based on specific adverse employment actions, denial of a reasonable accommodation, and hostile work environment. Distinct legal theories denote independent unlawful employment practices that may be addressed separately. As we point out in our brief, Moran himself separated his hostile work environment claim into offensive comments and disparate treatment, and the court treated his claims as briefed. And even if the court should have considered the alleged disparate treatment as part of Moran's hostile work environment claim, as we set forth in detail in our brief, and as the U of C amicus do not dispute, there was no evidence to support any of these allegations. As the district court opinion and the record reveal, Moran's allegations of disparate treatment were either untimely, lacked any evidentiary basis that he was treated differently than anyone else, or lacked evidence that he was treated differently based upon a protected characteristic. And for this reason, Judge St. Eve, on the hostile work environment claim, how do you get around our opinion in Ortiz that says the district courts have to consider the evidence as a whole? I understand your argument that claims are different and theories are different, but we have said very clearly that you have to look at all of the evidence and hear the district court reserved its review of the disparate treatment evidence. Well, Your Honor, I mean, first of all, our take is that the court said in Ortiz that you have to look at the evidence as a whole related to the specific type of claim. And in that case, for instance, it was looking at all of the evidence of disparate treatment together as a whole. And the court, in fact, in this case did do that in its brief. It doesn't talk about looking at all of the evidence of disparate treatment and incorporating it into a hostile environment claim. But beyond that, the issue really here in this case, even if that was correct, it amounts to harmless error. Because here, as we point out and argue in detail in our brief, there was no evidence to support that any of these actions that were in this case, he is now limited to based upon his religion. And not only is that analysis contained in the district court's opinion, but when we raised it in our response brief, the amicus didn't dispute that. They have not come back and responded and said any of our discussion of the evidence was improper. And fundamentally, this is a case of summary judgment. What they need to show is a genuinely disputed issue of material fact. And they have not done that. I mean, there are claims in this case that utterly lack evidence. And there is no dispute on that. So they're coming before the court and just saying generically, the court should have considered all this evidence together. And as we put together in our harmless error section, there's no showing that that the result would have been any different. A court has to look at an allegation of disparate treatment, to even if it is obliged to obligate is obliged to incorporate it, it has to look at whether or not the disparate treatment actually occurred. And if there's no evidence that there was any wrongful treatment based upon a protected characteristic, there actually isn't anything to incorporate that's going to change the result on a hostile work environment analysis. And for that reason, fundamentally, as well, the district court should be affirmed. If the court has no other questions on hostile work environment, I'm going to proceed to the two different summary judgment opportunities to brief and argue a claim in the district court. And he ultimately settled upon the claim that he was purportedly routinely denied breaks to pray. And I'd like to address two points today in that regard. First, his argument for reversal and appeal has been waived. And second, even if not waived, his assertion that he was continually and routinely denied prayer breaks is devoid of record support and fails for that reason as well. The amici posit that this court and the Supreme Court's precedent leaves room to disagree on the required elements of a religious failure to accommodate claim. And among the competing alternatives, if we take them at their word, Moran shows a theory that is amply supported by precedent in this circuit and the Supreme Court's decision in Abercrombie. That theory required him to show he suffered in adverse employment action. And Moran, who was clearly best suited to know his own claim, argued that he had been subjected to poor performance ratings, a performance deficiency notice, and termination because of his request for an accommodation. It was surely his prerogative, regardless of whether he could have argued something less or something else regarded to terms and conditions of employment as the EEOC in particular to choose how to prosecute his claim. The district court ruled upon the argument Moran propounded found it lacked any record support and granted summary judgment on that basis. And to be clear, the amici have not on appeal claimed that the court's analysis on this factual issue was contrary to the record. That alone warrants affirmance. They have not shown that the district court erred in its treatment of the argument Moran raised. Instead, they impermissibly seek reversal based upon a theory that their own brief show was available to him, but that he chose not to pursue. And the fact that amici believe that there is a more compelling argument than the one Moran chose is not a basis for reversal for the fundamental reason that it does not establish error by the district court. Not only are the amici acting contrary to basic principles of party waiver, which we cite in our brief, but the Supreme Court's recent opinion in Sinanig-Smith bars an amici from accomplishing what a party cannot, reversing judgment on an argument that is contrary to the one presented by a party represented by counsel in the district court. Nor is the University of Chicago's reply brief futility argument well-founded, given the arguments that they made in their opening brief, which set out how one could have made the arguments that one does not need to show an adverse employment action. And as the EEOC just stated moments ago, their argument fits, quote, comfortably within the seven circuits authority. So futility is not a well-taken argument. And even if the amici, if the court were going to consider the argument, it's not well-founded, based upon the clear articulation in Abercrombie that an adverse action is required. In all events, the record did not support a finding that Moran's claim was supported by the evidence. He has not shown a conflict with the workplace requirement. Instead, he alleged routine denials of breaks that absolutely lacked record support. He has not identified anybody who told him not to take breaks. He has admitted he wasn't disciplined for failing to take breaks. And on those alternative bases, this matter should be this matter can be affirmed. If the court has no other questions for the reasons set forth in our brief and those here today, we'd ask the judgment be affirmed. Thank you very much. Ms. Hall. Ms. Hall, are you still with us? Yes, Your Honor. I'm sorry. I was muted. I would like to briefly discuss both issues on rebuttal. For the hostile work environment issue, the district court found that the offensive comments on their own did not rise to a level of severity or pervasive to find an actionable adverse employment action. They did not determine that the evidence wasn't credible. They didn't determine that it did not happen, that the employer wasn't liable. They just determined that, considered alone, the offensive comments did not rise to a level of severity and pervasiveness. And similarly, the district treatment evidence was not considered on the merits. It was dismissed because it didn't rise to a level of an actionable employment action. Considered together, these issues may create a hostile work environment or establish a genuine issue through material fact requiring the hostile work environment issue to be submitted to a jury. On the failure to accommodate issue, Mr. Marra did not waive this claim in the district court. He acknowledged the law of the circuit and it would have been futile for him to argue against that in the district court. On the actual merits of this issue, which the advocate does not reach in its brief, the definition of religion tells us that the failure to accommodate on its own is a violation of 703A1. The failure to accommodate on its own is a violation of 703A1 and it should not require the employee to be doubly harmed and subject to another adverse employment action on top of that. For these reasons, the seven circuit prima facie standards for the failure to accommodate claim should be clarified in this panel or reexamined by the district court sitting en banc. Unless there are any more questions, that completes my argument. Thank you. Thank you. Our thanks are extended to all counsel in this case. In particular, Ms. Hall, you and the clinic have the thanks of the court for accepting the amicus appointment to brief this case. Thank you very much to everyone. The case is taken under advisement.